IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-CV-02201-DDD-STV

WAYAKON PHUENGNGERN,
SPORT IMPORT COMPANY LIMITED

    Plaintiffs,

v.

MEDITECH HUMAN PHARMACEUTICALS PRIVATE LIMITED,

    Defendant.

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT**

---

i

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** ................................................................................................ | 1 |
| **II.** | **LEGAL STANDARD** ........................................................................................... | 1 |
| **III.** | **SERVICE** .............................................................................................................. | 1 |
| **IV.** | **JURISDICTION** .................................................................................................. | 2 |
| | A.   Subject Matter Jurisdiction ................................................................... | 2 |
| | B.   Personal Jurisdiction .............................................................................. | 2 |
| **V.** | **WELL-PLEADED ALLEGATIONS OF FACT SUPPORT A DEFAULT JUDGMENT FOR PLAINTIFFS ON CLAIMS 1 AND 4** ........................................ | 4 |
| | A.   Claim 1: Declaratory Judgment and Injunctive Relief Regarding .net Domain ...................................................................................................... | 4 |
| | B.   Claim 4: Violation of 15 U.S.C. §1125(d) ............................................... | 8 |
| **VI.** | **RELIEF SOUGHT** ................................................................................................ | 12 |
| **VII.** | **CONCLUSION** ..................................................................................................... | 13 |

# TABLE OF AUTHORITIES

**Cases**

*American Academy of Husband-Coached Childbirth v. Thomas*, 2010 WL 5184779 (D. Colo. Dec. 15, 2010) .................................................................................................................. 9
*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................................................................... 3
*Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, Case No. 16-cv-02065-RM (D. Colo. Jan. 31, 2019) .......................................................................................... 1
*Cleary Building Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257 (D. Colo. 2009) .............. 10
*Domain Vault LLC v. Bush*, Case No. 14-cv-2621-WJM-CBS (D. Colo. Apr. 8, 2015) ............... 5
*Donchez v. Coors Brewing Co.*, 392 F.3d 1211 (10th Cir. 2004) ..................................................... 7
*Five Star Chemicals & Supply, LLC v. 5 Star Enter.*, Case No. 20-cv-02769-RM-NYW (D. Colo. June 24, 2021) ................................................................................................................. 4
*GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189 (D. Colo. 2019) ........................... 3
*Greenwich Insurance Company v. Daniel Law Firm*, Case No. 07-cv-02445-LTB-MJW (D. Colo. Mar. 24, 2008) ................................................................................................................. 4
*In re Rains*, 946 F.2d 731 (10th Cir. 1991) ..................................................................................... 1
*Lane Capital Management v. Lane Capital Mgmt*, 192 F.3d 337 (2d Cir. 1999) .......................... 7
*Marchex Sales, Inc. v. Tecnologia Bancaria, S.A.*, Case No. 1:14cv1306 (LO/JFA) (E.D. Va. May 21, 2015) ................................................................................................................. 5
*Prof'l Bull Riders, LLC v. Perfect Blend Int'l, LLC*, Case No. 14-cv-03510-CMA-KLM, 2016 WL 54115 (D. Colo. Jan. 5, 2016) .................................................................................. 2
*Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14 (1st Cir. 2001) .................................... 8
*Trader Joe's Co. v. Hallatt*, 835 F.3d 960 (9th Cir. 2016) ............................................................ 2
*Tripodi v. Welch*, 810 F.3d 761 (10th Cir. 2016) ........................................................................... 4
*U.S. v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002) .......................................................................... 3
*Utah Lighthouse v. Foundation*, 527 F.3d 1045 (10th Cir. 2008). ................................................. 8
*W. Acceptance, LLC v. Gen. Agric.*, Case No. 20-cv-00052-CMA-MDB (D. Colo. July 28, 2023) ................................................................................................................................................ 2
*Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136 (10th Cir. 2013) ................................................. 7
*Webroot Inc. v. Singh*, Civil Action No. 18-cv-01909-RM-STV (D. Colo. Aug. 27, 2019) ........ 12
*Williams v. Life Sav. & Loan*, 802 F.2d 1200 (10th Cir. 1986) ..................................................... 2

**Statutes**

15 U.S.C. § 1114(2)(D)(II)(v) ........................................................................................................ 6
15 U.S.C. § 1125(d) ..................................................................................................................... 10
15 U.S.C. § 1125(d)(1)(A) ........................................................................................................... 10
15 U.S.C. § 1125(d)(1)(B)(I) ....................................................................................................... 12
15 U.S.C. § 1125(d)(1)(C) ........................................................................................................... 10
15 U.S.C. § 1127 .......................................................................................................................... 10
28 U.S.C. § 2201 .......................................................................................................................... 15
28 U.S.C. § 2202 .......................................................................................................................... 15

**Rules**

Fed. R. Civ. P. 4(d) ........................................................................................................................ 2
Fed. R. Civ. P. 55 ........................................................................................................................... 1

**I.      INTRODUCTION**

Counsel for Defendant, a corporation, withdrew from this matter by granted motion. *See* ECF 39, 42. This Court repeatedly warned Defendant it may not proceed *pro se*. *See* ECF 42, 44, 45. Nonetheless, no new counsel entered an appearance for Defendant, nor has Plaintiff's counsel been contacted by anyone asserting they represent Defendant. *See* Decl. Wisnia at ¶ 11. This Court granted leave to Plaintiffs to file a motion for default judgment, *see* ECF 45, and Plaintiffs hereby move for default judgment on Claims 1 and 4 in the First Amended Complaint ("FAC") pursuant to Rule 55 of the Federal Rules of Civil Procedure.

**II.     LEGAL STANDARD**

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, Civil Action No. 16-cv-02065-RM, at *2 (D. Colo. Jan. 31, 2019) ("A party may not simply sit out the litigation without consequence.")[1] Unless the sought-after judgment is for "a sum certain," "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

**III.    SERVICE**

Defendant waived service of the complaint, *see* ECF 5, and Defendant's counsel entered an appearance in this case. *See* ECF 6. Plaintiff served the FAC on Defendant's counsel via electronic filing. *See* ECF 14. Defendant's counsel then filed a motion for bond, *see* ECF 15, and

---

[1]      Case attached at Ex. 1.

1

a motion to dismiss. *See* ECF 18. Service was thus sufficient. *See W. Acceptance, LLC v. Gen. Agric.*, Civil Action 20-cv-00052-CMA-MDB, at *4 (D. Colo. July 28, 2023).[2]

## IV. JURISDICTION

Before granting a motion for default judgment, the Court must ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).

### A. Subject Matter Jurisdiction

Plaintiff brings this action principally under the Lanham Act, and thus invokes this Court's federal question jurisdiction. 28 U.S.C. §§ 1331, 1338; *see also Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 966–68 (9th Cir. 2016) (addressing extraterritoriality of Lanham Act).

### B. Personal Jurisdiction

#### 1. Consent To Jurisdiction

Personal jurisdiction over Defendant is squarely established where the Defendant admits jurisdiction. *See Prof'l Bull Riders, LLC v. Perfect Blend Int'l, LLC*, Civil Action No. 14-cv-03510-CMA-KLM, 2016 WL 54115, *5 (D. Colo. Jan. 5, 2016). Here, Defendant admits it consented to jurisdiction of this Court for the purposes of challenges to the UDRP decision regarding registration of the meditechpharmaceutical.net domain name (the ".net domain"). *See* ECF 18 at p. 2 (Defendant's motion to dismiss) (citing to Ex. 1 at p. 15, §10); *see also* ECF 14 at ¶¶ 45-46. Personal jurisdiction over Defendant regarding **Claim 1**, which seeks declaratory judgment that the UDRP decision regarding the .net domain is incorrect and contrary to law, and Plaintiff's registration and use of the .net domain was and is lawful, is thus established. *See* ECF 15 at ¶¶ 80-85.

---

[2]   Case attached at Ex. 2.

## 2. Pendent Personal Jurisdiction

Because Defendant consented to personal jurisdiction regarding the facts of the registration of the .net domain, *see* §IV(B)(1), *supra*, its consent is fairly extended to cover personal jurisdiction regarding Plaintiffs' **Claim 4**. *See U.S. v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (explaining "once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction"); *see also GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1198 (D. Colo. 2019); *RMCO Holdings, LLC v. Golden Trading & Transp.*, Civil Action 22-cv-00650-NYW-KLM, at *14 (D. Colo. Feb. 1, 2023); *Bazarian Int'l Fin. Assocs., L L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 12 n.6 (D.D.C. 2016) (exercising pendant personal jurisdiction as it "serves the interests of 'judicial economy, convenience and fairness to litigants' so that the facts need only be litigated once.").

**Claim 4** arises from the same common nucleus of facts as in Claim 1. *See* Claim 4 of FAC at ¶¶ 97 –101 (alleging Defendant's attempt to transfer the registration of the meditechpharmaceutical.com domain name (the ".com domain") violates §1125(d)). It is inextricably intertwined with Defendant's attempts to register and transfer the .net domain, because Defendant's attempts to confuse Plaintiffs' actual and potential customers relied upon its efforts to misappropriate both the .net and .com domain names, copy Plaintiffs' web content, obtain trademarks on products that it knew were already in use by Plaintiffs, and promote substantially identical offerings as Plaintiffs. *See, e.g.,* FAC at ¶¶ 67-79, 94, 99, 103. The Court may therefore exercise pendant personal jurisdiction over Claim 4. *See, e.g., Bazarian Int'l Fin. Assocs.,* 168 F. Supp. 3d 1 at 12 n.6.

**V.    WELL-PLEADED ALLEGATIONS OF FACT SUPPORT A DEFAULT JUDGMENT FOR PLAINTIFFS ON CLAIMS 1 AND 4**

The Court must consider whether the well-pleaded allegations of fact— which are admitted by the Defendant upon default in a claim for relief under Federal Rule of Civil Procedure 55— support a judgment on the claims against Defendant. *See Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016); *see also Five Star Chemicals & Supply, LLC v. 5 Star Enter.*, Case No. 20-cv-02769-RM-NYW, at *6 (D. Colo. June 24, 2021) (considering whether affidavits or exhibits support default judgment);[3] *Greenwich Insurance Company v. Daniel Law Firm*, Case No. 07-cv-02445-LTB-MJW, at *3 (D. Colo. Mar. 24, 2008) (considering affidavits and exhibits in determining whether claim for default judgment was established).[4] If there is sufficient basis in the pleadings for a default judgment, then it may be entered. *See Tripodi v. Welch*, 810 F.3d 761, 766 (10th Cir. 2016).

   **A.    Claim 1: Declaratory Judgment and Injunctive Relief Regarding .net Domain**

        1.    **Law.** The Internet Corporation for Assigned Names and Numbers ("ICANN") has adopted an international policy known as Uniform Domain Name Dispute Resolution Policy ("UDRP").[5] All registration agreements for .net domain names necessarily incorporate the terms of the UDRP. *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14,

---

[3]    A copy of this case is attached as Ex. 3.

[4]    A copy of this case is attached as Ex. 4.

[5]    If the Internet has anything equivalent to a supervisor, it is . . . ICANN. ICANN . . . administers the domain name system pursuant to a Memorandum of Understanding with the United States Department of Commerce. ICANN accredits domain name registrars, which are the businesses that sell domain names (web addresses) to the consuming public. . . .

*See Domain Vault LLC* at *2 (citations omitted).

4

20 (1st Cir. 2001). " . . .[15 U.S.C.] § 1114(2)(D)(v) provides disappointed administrative dispute resolution participants with a chance to have *any* unfavorable UDRP decision reviewed in a U.S. court." *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 28 (1st Cir. 2001); *see also* UDRP ¶ 4(k)). Subsection (D)(iv) further provides that if a registrar transfers a registrant's domain name based on a knowing misrepresentation by another person that "a domain name is identical to, confusingly similar to, or dilutive of a mark," then the person making the misrepresentation is liable to the registrant. *See* 15 U.S.C. § 1114(2)(D)(II)(v); *see also Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 28-29 (1st Cir. 2001); *Domain Vault LLC v. Bush*, Civil Action No. 14-cv-2621-WJM-CBS, at *2-4 (D. Colo. Apr. 8, 2015).[6] This includes material misrepresentations made "in connection with the UDRP proceeding." *See Marchex Sales, Inc. v. Tecnologia Bancaria, S.A.*, Civil Action No. 1:14cv1306 (LO/JFA), at *9 (E.D. Va. May 21, 2015).[7] This Court may grant injunctive relief including transfer of the domain name. *See* 15 U.S.C. § 1114(2)(D).

      **2.**      **Facts.** On or about July 25 or 26, 2023, Defendant filed a complaint under the UDRP, in Claim No. FA2307002054491, seeking to transfer ownership of the .net domain from Plaintiff Phuengngern to Defendant. ECF 14 at ¶ 45. Within that filing, Defendant consented to the jurisdiction of this Court. ECF 14 at ¶ 46. Due to procedural error by the forum, Plaintiffs were not permitted to submit an answer nor a response to the Complaint. ECF 14 at ¶ 47. On or about August 17, 2023, the arbitration panel assigned to the case issued a default decision ruling against Plaintiff Phuengngern and in favor of Defendant (the "'5449 UDRP decision"). ECF 14 at ¶ 48. The arbitrator did not consider any argument or evidence from Plaintiffs in arriving at its

---

[6]    Case attached at Ex. 5.

[7]    Case attached at Ex. 6.

decision. ECF 14 at ¶ 48. The decision held that in 2019, Defendant had registered the mark "Meditech Engineered for Performance" in India and the USPTO. The decision also found Plaintiff Phuengngern lacks rights or legitimate interests in the use of the .net domain name and registered and used it in bad faith. *See* Decl. Wisnia at ¶ 4; *see also* Ex. A to Decl. Wisnia at "Findings" (54491 UDRP Decision).

      **3.**      **Analysis.** At minimum, because Plaintiffs used the "Medi Tech" and "Meditech Pharmaceutical" marks and meditechpharmaceutical .net and .com domain names in connection with a *bona fide* offering of goods *years* before the Defendant registered similar marks and initiated the UDRP proceeding, Plaintiffs' registration and use of the .net domain do not violate federal trademark law, or any provision of the UDRP, including Paragraph 4(a)(iii), and the '5449 UDRP decision is incorrect and contrary to law. ECF 14 at ¶¶ 49-50; *see also* Decl. Wisnia at ¶ 5; Ex. B to Wisnia Decl. at § 4 (c) (Uniform Domain Name Dispute Resolution Policy). For example, beginning in January 2011, Plaintiff Sports Import's predecessor company, Food Global Innovation, used the "Medi Tech" and "Meditech Pharmaceutical" marks in business internationally. ECF 14 at ¶ 8. In 2014, Food Global registered the domain meditechpharmaceutical.net. ECF 14 at ¶¶ 11-13. Food Global's advertising and marketing expenses in connection with the domain names (both .com and .net) and trade name "Meditech" was substantial, exceeding $1,000,000 from 2011 to 2017. ECF 14 at ¶ 15. During that same time period, Food Global's sales exceeded $31 million. *Id.* Food Global assigned all its trademark rights to Plaintiff Sport Import. ECF 14 at ¶¶ 17-18. Sport Import began using the .net domain in 2019. ECF 14 at ¶19. Sport Import's advertising and marketing expenses in connection with the .net domain and the marks were substantial, exceeding $750,000 from 2019 to 2022. ECF 14 at ¶ 22. In that same time period, Sport Import's sales exceeded $59 million. *Id.* Images of Food Global

6

and Sport Import's use of the "Medi Tech" mark on the .net domain web site each and every year from 2014 – 2023 are included in the FAC. *See* ECF 14 at ¶ 23.[8]

Moreover, Plaintiff Sport Import also established common law trademark rights in the marks at least *eight years* before Defendant registered a different version of the marks, and registered and used the .net domain *five years* before Defendant registered the marks. This is because there are five categories of marks, and "[f]anciful (made-up words expressly coined to serve as trade or service marks) marks . . . are inherently distinctive, and thus receive the greatest protection against infringement." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004); *see also Lane Capital Management v. Lane Capital Mgmt*, 192 F.3d 337, 344 (2d Cir. 1999) (holding that fanciful marks are "automatically protected"). No showing of secondary meaning is required for "fanciful" marks, even if they are not registered marks. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1152 (10th Cir. 2013). Here, "Medi Tech" is a made-up word used to market health supplements and other items used by bodybuilders. *See* Decl. Wisnia at ¶ 6. Plaintiff's "Medi Tech" and "Medi Tech Pharmaceutical" marks are therefore fanciful marks.[9]

---

[8] After the '5449 UDRP decision, the .net domain registration was cancelled. ECF 14 at ¶ 41. Plaintiff Phuengngern, an employee of Plaintiff Sport Import, then re-acquired it at auction and used a registrar in this judicial district to re-register the .net domain in good faith. ECF 14 at ¶¶ 42-44. Plaintiff Phuengngern assigned all rights in the .net domain to Plaintiff Sport Import. ECF 14 at ¶43.

[9] Marks that are not "fanciful" may be "suggestive." Suggestive marks also are considered inherently distinctive and need not acquire secondary meaning. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1152 (10th Cir. 2013). A "suggestive" mark "suggests or evokes, rather than describes, the nature of the product, requiring "the consumer to use imagination and perception to determine the product's nature." *Id.* Even if the Plaintiffs' "Medi Tech" and "Medi Tech Pharmaceutical" marks were not "fanciful," the FAC adequately pleads facts showing each mark was "suggestive." *See* ECF 14 at ¶ 10 (Plaintiff's products include health supplements used by bodybuilders).

### B.     Claim 4: Violation of 15 U.S.C. §1125(d)

Claim 4 alleges Defendant's registration and use of the .com domain name is and was in violation of § 1125(d). *See* ECF 14 at ¶¶ 97-101. Plaintiff Sport Import has standing to bring this claim, as it is the mark holder.[10] *See* ECF 14 at ¶¶ 9-10 (Cilli registered .com domain as officer of Food Global); ¶¶ 17-18 (Cilli and Food Global assigned rights in .com domain to Plaintiff Sport Import); ¶ 21 (Cilli is a director of Plaintiff Sport Import). Pursuant to 15 U.S.C. § 1125(d)(1)(C), Plaintiffs request the Court order transfer of the .com domain to Plaintiff Sport Import. *See* ECF at ¶ 101.

> To prevail on the cybersquatting claim, [Plaintiff] must show (1) that its trademark . . . was distinctive at the time of registration of the domain name, (2) that the domain names registered by [Defendant] . . . are identical or confusingly similar to the trademark, and (3) that [Defendant] used or registered the domain names with a bad faith intent to profit.

*See* 15 U.S.C. § 1125(d)(1)(A); *see also Utah Lighthouse v. Foundation*, 527 F.3d 1045, 1057 (10th Cir. 2008).

Here, the elements of Claim 4 are well-pleaded and otherwise established as follows:

---

[10]     15 U.S.C. §1125(d) prescribes who may bring a suit thereunder, and does not limit actions to the holders of ***U.S.*** trademark rights. *See* 15 U.S.C. § 1125(d)(1)(A). For the purposes of the statute, the definition of a "mark" encompasses any trademark. *See* 15 U.S.C. § 1127. The term "trademark," in turn, includes any word "(1) used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods . . . ." *See* 15 U.S.C. § 1127. The term "person" . . . includes a juristic person. The term "juristic person" includes a . . . corporation." *Id*. This lack of limitation makes sense:
> [I]nterpreting "mark owner" to apply only to registered U.S. marks would create a perverse result at odds with our view of the ACPA as granting relief to registrants who have wrongly lost domain names in UDRP proceedings. . . . It would leave registrants unprotected against reverse domain name hijackers so long as the hijackers are not registered with the PTO.

*See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 24 (1st Cir. 2001).

8

      (a)      **Plaintiff's trademarks "Medi Tech" and "Medi Tech Pharmaceutical" were distinctive at the time of Defendant's registration of the domain name "meditechpharaceutical.com."**

Plaintiff's "Medi Tech" and "Medi Tech Pharmaceutical" marks are fanciful and thus inherently distinctive. *See* Section V(A)(3), *supra*.

After Plaintiff Sport Import's predecessor company switched to the .net domain in 2014, Defendant registered the .com domain name. ECF 14 at ¶ 55; *see also* Decl. Wisnia at ¶¶ 4, 7, 8; *see also* Ex. C to Wisnia Decl. (Landing page of Defendant's web site at .com domain, stating "WWW.MEDITECHPHARMACEUTICAL.COM - THE OFFICIAL DOMAIN SINCE 2014"); Ex. D to Wisnia Decl. (ICANN registration data lookup tool results for meditechpharmaceutical.com, showing domain registration on "2014-07-16)"; Ex. A to Decl. Wisnia at "Complainant's Contentions" (54491 UDRP Decision). Defendant continues to be the registrant of the .com domain today. *See* ECF 18 at p.3 and p. 12 fnte 5; *see also* ECF 14 at ¶ 51.

As Plaintiff's fanciful marks "Medi Tech" and "Medi Tech Pharmaceutical" have been "distinctive" since 2011, and Defendant did not register the domain name "meditechpharaceutical.com" until 2014, Plaintiff's marks were distinctive at the time of Defendant's registration of the .com domain.

      (b)      **The domain name registered by Defendant was identical or confusingly similar to the trademark.**

The domain name registered by Defendant, meditechpharmaceutical.com, is identical to Plaintiff Sport Import's trademarks "Medi Tech" and "Medi Tech Pharmaceutical." This element is thus satisfied. *See American Academy of Husband-Coached Childbirth v. Thomas*, Civil Action No. 10-cv-2899-CMA-MEH at *9, 2010 WL 5184779 (D. Colo. Dec. 15, 2010).

      (c)      **Defendant used or registered the domain name with a bad faith intent to profit.**

9

"The ACPA enumerates nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit." *See Cleary Building Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1264 (D. Colo. 2009), citing to 15 U.S.C. § 1125(d)(1)(B)(I). This Court may consider factors such as:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

*See Cleary*, 674 F. Supp. 2d at 1264 n.2.

Here, the weight of the factors strongly indicates Defendant had a bad faith intent to profit from its use of Plaintiffs' "Medi Tech" and "Meditech Pharmaceutical" trademarks. ECF at ¶¶ 99, 100. Specifically, **Factor I favors Plaintiffs**, as Defendant included Plaintiffs' entire trademark "Medi Tech Pharmaceutical" in the domain name at issue (meditechpharmaceutical.com). *See* ECF ¶¶ 8, 56, 80. Factor II is irrelevant to this case, as no personal names are involved, and is therefore neutral. **Factor III favors Plaintiffs**, as Defendant has no known use of the domain name in connection with the bona fide offering of any goods or services prior to Plaintiffs' use of the web site in 2011. *See* Decl. of Wisnia at ¶ 9. **Factor IV favors Plaintiffs**, as Defendant had no known bona fide noncommercial or fair use of the mark. *See* Decl. of Wisnia at ¶ 10. **Factor V favors Plaintiffs**, as Defendant intended to divert consumers from Plaintiffs' online location at meditechpharmaceutical.net to its own site at meditechpharmaceutical.com for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the site, which could harm the goodwill represented by Plaintiffs' marks "Medi Tech" and "Medi Tech Pharmaceutical." *See* ECF 14 at ¶ 80 (Defendant copied content from Plaintiffs' web site and included it on the meditechpharmaceutical.com web site); ECF 14 at ¶¶ 8, 9, 68 – 79 (Defendant sought to trademark at least ten additional marks that had been used by Plaintiffs (or Plaintiffs' predecessor Food Global) on the meditechpharmaceutical.com web site, knowing the marks were already in use by Plaintiffs); and ECF 14 at ¶¶ 53 – 65 (Plaintiffs filed submissions bearing false information with the UDRP in an effort to keep control of the .com domain name). Factor VI favors Defendant, as it is not alleged that Defendant offered to transfer the meditechpharmaceutical.com domain name to the Plaintiffs or any third party. Factor VII is favors Defendant, as it is not alleged Defendant intended to fail to maintain accurate contact information

11

regarding the registration of the .com domain name. **Factor VIII favors Plaintiffs**, as Defendant attempted to register multiple domain names which it knows are identical or confusingly similar to Plaintiffs' marks that are distinctive at the time of the registration of such domain names. *See* ECF 14 at ¶¶ 39, 45 (.net domain). **Factor IX favors Plaintiffs**, as the Plaintiffs' marks incorporated into Defendant's domain name registration is inherently distinctive as a fanciful mark. As the FAC demonstrates facts showing that six of the eight relevant factors favor Plaintiffs, the fact that Defendant's use of a trademark involves a bad faith intent to profit is adequately pleaded.

## VI.   RELIEF SOUGHT

Regarding Claim 1, Plaintiffs seek a declaration that its registration and use of the .net domain was and is lawful, and the decision in UDRP Claim No. FA2307002054491UDRP is incorrect and contrary to law. ECF 14 at 84. Plaintiffs also seek injunctive relief under 15 U.S.C. §1114 and 28 U.S.C. §2202 in the form of an order to the .net registrar ***not*** to transfer the .net domain to Defendant, and an order that the registrar must release its current "lock" on the domain name so that Plaintiff may enjoy its full use. ECF 14 at ¶¶ 85, 140.

Regarding Claim 4, Plaintiff requests the Court order Defendant, its agents, assignees, the registrar for the .com domain, the registry for the .com domain, and all other persons with actual notice of this order, to transfer the .com domain to Plaintiff Sport Import within 14 days, directly and at Defendant's own cost. *See Webroot Inc. v. Singh*, Case No. 18-cv-01909-RM-STV, at *13

(D. Colo. Aug. 27, 2019).[11] Plaintiffs request an Order prohibiting Defendant, its agents, and its assignees, from using or maintaining the .com domain. *See* ECF 14 at ¶ 91.[12]

## VII. CONCLUSION

Plaintiffs respectfully request the Court grant its motion and order requested relief.

DATED: March 29, 2024

Respectfully submitted,

/s/*Howard N. Wisnia*
Howard N. Wisnia
WISNIA PC
12636 High Bluff Dr., Suite 400
San Diego, CA  92130
858.461.0989
Howard@wisnialaw.com
*Attorney for Plaintiffs*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

---

[11]   Case attached at Ex. 7.

[12]   As Plaintiffs seek injunctive relief under 28 U.S.C. § 2202, *see* ECF 14 at ¶ 91, and thereby under 28 U.S.C. § 2201, neither of which require that the complainant be a "registrant," Claim 2 for injunctive relief is adequately pleaded. *See* ECF 14 at ¶¶ 9-10; 17-18, 43, 51-66.

13

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the date noted below a true and correct copy of the foregoing document was electronically filed with the Court's ECF system and served on all counsel of record who are deemed to have consented to electronic service.

DATED:  March 29, 2024

Respectfully submitted,

/s/*Howard N. Wisnia*
Howard N. Wisnia
WISNIA PC
12636 High Bluff Dr., Suite 400
San Diego, CA  92130
858.461.0989
Howard@wisnialaw.com
*Attorney for Plaintiffs*